IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JERRI A. M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-CV-667-JFJ |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Jerri A. M. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), and 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.   General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 44-year-old female, protectively applied for Title II disability insurance benefits on February 5, 2019, alleging a disability onset date of January 1, 2019, later amended to January 23, 2019. R. 22, 45-46, 169-170, 272-275. Plaintiff claimed she was unable to work due to numerous conditions, including borderline pulmonary hypertension-tachycardia, polycythemia, diverticulosis-polyp, kidney disorder (stones) 2 stent surgeries since October 2018, endometriosis, chronic anxiety, extensor tendonosis-epicondylitis, esophageal ulcers, gout, and evaluation for carpal tunnel both hands. R. 188. Plaintiff's claim for benefits was denied initially on April 4, 2019, and on reconsideration on June 27, 2019. R. 60-93. Plaintiff then requested a hearing before

an ALJ, and the ALJ conducted a hearing on April 13, 2020. R. 42-59. The ALJ issued a decision on April 24, 2020, denying benefits and finding Plaintiff not disabled because the medical-vocational framework (also known as the "grids") directed such a finding. R. 22-34. The Appeals Council denied review, and Plaintiff appealed. R. 7-9; ECF No. 2.

The ALJ found that Plaintiff's date last insured was September 30, 2021. R. 24. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2019. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: hypertension with history of tachycardia; atherosclerosis of abdominal aorta; polycythemia; leukocytosis; and tendonitis left elbow. *Id.* The ALJ found Plaintiff's impairments of status post-stenting and post-surgery for kidney stones, endometriosis, diverticulitis, status post-cholecystectomy, asthma, fibromyalgia, and anxiety to be non-severe. R. 25. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in all four functional areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; adapting or managing oneself; and interacting with others. R. 25-26. At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 26-28.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). R. 28. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 33. The ALJ found at step five, however, that Plaintiff could perform all of the exertional demands at the light exertional level. Therefore, considering Plaintiff's RFC, age,

education, and work experience, the ALJ concluded that Medical-Vocational Rule 202.21 directed a finding of "not disabled." R. 34.

### III.   Issues

Plaintiff raises three allegations of error on appeal, which the Court re-orders for clarity: (1) the ALJ erred by failing to find Plaintiff's chronic kidney stones to be a severe impairment at step two; (2) the RFC determination is flawed, because it did not include Plaintiff's left upper extremity limitation; and (3) the ALJ's consistency analysis was improper, resulting in an erroneous mechanical application of grid Rule 202.21.  ECF No. 15 at 4.

### IV.   Analysis

#### A.   ALJ's Step-Two Analysis of Kidney Stone Issue Was Adequate

Plaintiff argues that, at step two of the analysis, the ALJ failed to adequately consider her chronic kidney stones.  In support, Plaintiff points to her history of right flank pain resulting in four kidney stone procedures between October 2018 and October 2019.  R. 287, 426, 707, 810-812, 826-827, 848, 922-931, 940-941, 948.  The ALJ considered Plaintiff's status post-stenting and surgery for kidney stones at step two, but he did not find the impairment to be severe.  R. 25.

As an initial matter, Plaintiff's argument that the ALJ committed reversible error at step two by failing to find her kidney stones to be a severe impairment fails.  Because the ALJ found Plaintiff had severe impairments and addressed her functionally-limiting medically determinable impairments, the issue of whether the ALJ found *all* of Plaintiff's impairments to be severe is legally irrelevant.  *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("[F]ailure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."); *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that Mrs.

Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

Moreover, the ALJ thoroughly considered Plaintiff's history of kidney stones at step two. The ALJ noted that Plaintiff had four kidney stone removal procedures with stents between October 2018 and October 2019. R. 25. He noted that Plaintiff had reported some right back pain to her care provider, and she recently had received an ultrasound that did not show a current stone. *Id. See* R. 1028-1030 (November 2019 visit with Nephrology Associates noting Plaintiff's report of right back pain and recent ultrasound that did not show a current stone). He also noted that at a February 2020 visit with her physician at Nephrology Associates, Plaintiff reported that she was feeling well and had no new complaints. R. 25 (citing R. 1248). Plaintiff does not attempt to refute the ALJ's analysis with any additional evidence.

Additionally, in discussing the RFC, the ALJ summarized Plaintiff's records regarding her kidney stones. R. 30-32. He noted that in March 2019, Plaintiff reported "some very vague flank pain that she ranks 2 out of 10" to her urologist. R. 30 (citing R. 828-829). He also noted that Plaintiff reported "some right flank pain" in October 2019, following her latest kidney stone removal procedure, but physical examination was normal, and a November 2019 CT scan of the pelvis and abdomen showed no acute process. R. 31-32 (citing R. 977-979, 1025). At a November 2019 visit at Nephrology Associates, Plaintiff reported pain in her right back, but physical examination was normal apart from +1 bilateral ankle edema and flank tenderness, worse on right side. R. 32 (citing R. 1028-1030).[2] Finally, as the ALJ noted, a January 2020 x-ray of the abdomen and pelvis revealed negative findings, and a March 2020 physical examination was generally

---

[2] The ALJ did not note the examination finding of flank tenderness, but he did note Plaintiff's complaint of right back tenderness and assessment of kidney stones with stable kidney function. R. 32.

6

normal, with normal muscle strength and tone with normal gait. R. 32 (citing R. 1258, 1265). Again, Plaintiff does not attempt to refute this evidence with any additional, contrary evidence the ALJ failed to consider.

Plaintiff fails to explain how her kidney stones required greater RFC limitations than the ALJ provided, and she fails to acknowledge that more recent records show she was no longer suffering from pain related to kidney stones. *See* R. 1248 (Plaintiff reported at February 2020 follow-up for kidney stones that she was "feeling well and ha[d] no new complaints," and she was experiencing "[n]o dysuria, flank pain, chest pain, shortness of breath, nausea or vomiting"). The Court identifies no step-two error in the ALJ's consideration of Plaintiff's history of kidney stones.

### B. ALJ's Evaluation of Left Upper Extremity Limitation in Determination of RFC Was Proper

Plaintiff argues the ALJ's RFC for the full range of light work was flawed, because the ALJ failed to include any limitations to account for her left elbow lateral epicondylitis. In support, Plaintiff cites records indicating she experienced left elbow pain and was scheduled for a lateral epicondylar release in 2019, but the surgery had to be cancelled due to Plaintiff's cardiac issues. *See* R. 765-767, 769-772, 817-816, 1255-1257. She also points to her testimony that her non-dominant left elbow was "extremely weak," making it difficult to lift anything. R. 49, 54. Plaintiff does not specify, however, what limitations would be appropriate to accommodate this condition.

Plaintiff's argument is unavailing. As Plaintiff acknowledges, the ALJ considered Plaintiff's left elbow impairment and found the impairment of tendonitis of the left elbow to be severe at step two. R. 24. In determining the RFC, the ALJ noted Plaintiff's testimony that her left elbow was weak and caused issues with lifting for very long. R. 29. He noted that Plaintiff underwent an EMG/nerve conduction study of the left upper extremity in March 2019, which showed no nerve entrapment and no cervical radiculopathy. R. 30 (citing R. 772). At a March

7

2019 visit with David King, D.O., he diagnosed lateral epicondylitis of the left elbow and recommended a decompression surgery. R. 29-30 (citing 765-767, 774-777). At that visit, Dr. King stated that radiographs of the left elbow demonstrated some small perarticulation calcification associated with her olecranon. R. 30 (citing R. 767). Plaintiff continued to complain of left elbow pain at a visit with Dr. King in April 2019, but her surgery had to be cancelled due to underlying cardiac issues. R. 30 (citing R. 814-816). Dr. King examined her again in June 2019, again finding lateral epicondylitis of the left elbow. R. 1255-1257. He observed marked tenderness over the lateral epicondyle of the left elbow, and pain when she tried to power grip, which was localized at the lateral side of the left elbow. R. 1257. As of April 2020, Plaintiff still had not undergone the surgery. R. 46.

The ALJ's RFC determination of light work adequately took Plaintiff's left upper extremity limitation into account, and he adequately explained the RFC limitations. In particular, the ALJ stated that Plaintiff's complaints of pain were not consistent with the totality of medical evidence of record, and the majority of physical examinations were normal, with radiographic evidence showing normal to minimal findings. *Id.* The ALJ also found persuasive the state agency reconsideration reviewer's June 2019 opinion that Plaintiff could perform light work. R. 33 (citing R. 78-93). The agency reviewing physician had considered at least some of Plaintiff's records regarding her left elbow pain. R. 91 (citing R. 814-816) (April 2019 examination records from Dr. King).

Plaintiff does not challenge the ALJ's reliance on the reconsideration agency reviewer, nor does she persuasively explain why a limitation to light work was inadequate to accommodate the left elbow impairment. Instead, Plaintiff simply lists out records regarding her left elbow and concludes the ALJ "incorrectly determined that [Plaintiff] was not limited by the left elbow lateral

8

epicondylitis" in the RFC. ECF No. 15 at 9. However, the ALJ did accommodate Plaintiff's left elbow impairment by limiting her to light work, which requires lifting up to 20 pounds occasionally and 10 pounds frequently. 20 C.F.R. § 404.1567(b). Moreover, the ALJ discussed most of the records Plaintiff cites, and none of those records plainly contradict the RFC.

In the reply brief, Plaintiff reiterates Dr. King's June 2019 observation of pain over the left elbow, including pain when power gripping. R. 1255-1257. While the ALJ did not discuss this particular record, he did discuss Dr. King's observations of pain over the left elbow in March and April of 2019, and Dr. King's recommendation for left elbow surgery. R. 29-30. The ALJ still concluded that, based on Plaintiff's medical records and the reconsideration agency reviewer's findings, she could perform light work. Plaintiff contends this limitation was inadequate, but she fails to identify any specific error in the ALJ's RFC assessment. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (cleaned up).

    **C.**    **ALJ's Consistency Analysis Was Legally Proper and Supported by Substantial Evidence**

Plaintiff argues the ALJ's consistency analysis was improper. In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to

9

perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[3]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." R. 29. After reviewing the medical and opinion evidence, including Plaintiff's history of pain due to kidney stones and left elbow epicondylitis, the ALJ concluded that Plaintiff's complaints of pain were not consistent with the

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

totality of medical evidence of record. R. 33. He explained that Plaintiff had "complaints of not being able to work due to pain, fatigue, and cardiac issues," but "the majority of physical examinations have been normal" and "[r]adiographic evidence has only showed normal to minimal findings." *Id.*

Plaintiff argues the ALJ's consistency analysis was erroneous, because (1) it was mere "boilerplate," and (2) Plaintiff has experienced consistent pain from her kidney stones and left elbow issues. *See* R. 287, 426, 848, 948, 1255-1257, 922-931, 940-941, 1255-1257. The Court rejects Plaintiff's arguments and finds that the ALJ's consistency analysis was proper.

First, the Court finds the ALJ's consistency discussion was more than mere boilerplate. To the contrary, the ALJ discussed Plaintiff's alleged pain in detail throughout the decision, including her right flank and left elbow pain. R. 29-33. The ALJ then concluded that Plaintiff's allegation of disabling pain was not consistent with her medical records and opinion evidence from the agency reconsideration reviewer. He explained that "the majority of physical examinations have been normal" and "[r]adiographic evidence has only showed normal to minimal findings." R. 33. This discussion is adequate to satisfy SSR 16-3.

Second, the record supports the ALJ's conclusion that Plaintiff's pain was not disabling. Regarding kidney stones, as explained above in Part IV.A, the ALJ thoroughly considered Plaintiff's kidney stone issues and the resulting pain, concluding at step two that it was not a severe impairment based on the medical record. R. 25. Notably, in March 2019, Plaintiff reported her right flank pain to be "very vague" and ranked "2 out of 10." R. 30 (citing R. 828). After her latest kidney stone removal procedure in October 2019, Plaintiff continued to complain of right flank pain, but a November 2019 CT scan revealed no acute process and a January 2020 x-ray of the abdomen showed negative findings. R. 31-32 (citing R. 977-979, 1025, 1258). At a February

11

2020 visit with her physician at Nephrology Associates, Plaintiff reported that she was feeling well, had no new complaints, and had no flank pain. R. 25 (citing R. 1248). A March 2020 physical examination was also generally normal, with normal muscle strength, normal muscle tone, and normal gait. R. 32 (citing R. 1265). These records provide substantial evidence supporting the ALJ's consistency conclusion that the majority of physical examinations were normal and radiographic evidence showed only normal to minimal findings.

Regarding the left elbow, as explained above in Part IV.B, the ALJ discussed Plaintiff's complaints of left elbow pain and her physician's recommendation for decompression surgery based on radiographic findings of a small periarticular calcification and observations of tenderness over areas of the left elbow. R. 29-30. The ALJ accounted for Plaintiff's alleged lifting limitations due to left elbow pain by limiting her to light exertion work. Although Plaintiff points to records showing she experienced tenderness at the left elbow and needed surgery for relief (R. 765-767, 814-816, 1255-1257), the ALJ discussed most of these records and still concluded her pain did not prevent her from working.

In the reply brief, Plaintiff additionally argues that the ALJ's findings that "the majority of physical examinations have been normal" and "[r]adiographic evidence has only showed normal to minimal findings" were wrong, because "[n]othing is normal about having four stone removal procedure within a period of one year." ECF No. 21 at 3-4. However, Plaintiff ignores the fact that her more recent records show significant improvement in her flank pain and negative radiographic findings. *See* R. 1025 (November 2019 CT scan of pelvis and abdomen showed no acute process), R. 1028 (Plaintiff complained of right back pain but reported having a recent ultrasound that did not show current kidney stone), R. 1258 (January 2020 abdominal x-ray showed negative findings), R. 1248 (Plaintiff reported at February 2020 nephrology follow-up

visit that she was "feeling well and ha[d] no new complaints," including no flank pain, nausea or vomiting).  The ALJ noted these records, which support his consistency finding.  Again, Plaintiff simply asks the Court to re-weigh the evidence, which is not permitted.  *See Hackett*, 395 F.3d at 1172; *Lax*, 489 F.3d at 1084.

The ALJ's discussion of Plaintiff's subjective complaints and the objective evidence was proper.  Correspondingly, the Court identifies no error in the ALJ's mechanical application of the grids based on the RFC for the full range of light work.

**V.      Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 9th day of March, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**